Morning, Your Honors. Mike Bresnahan, representing Julio Jesus Higuera. May it please the Court. I'd like to jump to the second argument. I think that's the best argument in this case for relief. District Court erred in imposing a sentence that was procedurally erroneous. The District Court in this case sentenced my client, Mr. Higuera, to 20 months in prison, I believe to ensure that he would be there long enough to complete the RDAP program, which is a drug and alcohol rehab program. It's a 500-hour program. It takes a long time to complete. In that case, during the sentencing proceeding, the District Court judge said, and I quote, the Court has sentenced defendant to that term, that term, 20 months of prison to allow the defendant correctional treatment, in particular, the RDAP program. And there's some context for that particular statement. That statement followed a rather long discussion about what was going on with Mr. Higuera and his life, the fact that drugs and alcohol were essentially preventing him from succeeding. And the judge, throughout that conversation, seemed singularly focused on how crucial drug and alcohol rehab would be to Mr. Higuera to succeed. Is he in the RDAP program as he's incarcerated now? No. So he didn't, in fact, get into it at all? That's what I'm told, yeah. Well, what's wrong with the preliminary discussion about rehabilitation? There's nothing wrong with the discussion, Your Honor. If you take out the statement you just quoted, would you agree that the sentencing would have been proper? Well, we still have to wonder why he sentenced him to 20 months with the guidelines arranged there following the discussion that preceded that sentence. And so I think the sentence would still be suspect because there was a long discussion about the RDAP program beforehand, and then the judge issues a 20-month sentence. The recommendation was 24, isn't that right? Well, that was the recommendation. So it's less than the recommendation. He didn't follow the recommendation in total. That's true, but it was also almost twice the policy statement range of 12 months. And the judge did make that statement, and I think we have to assume that the judge meant what he said. He said it for a reason, and that was his reason for imposing the sentence. And the judge having said that, this case is very similar to the Grant case out of the Ninth Circuit that I've cited in my brief. There the supervised release was revoked where the defendant was having problems with alcohol abuse, possibly drug abuse. The guidelines or the policy statement range there was 3 to 9 months. The court imposed 24 months, again, expressly to ensure that Mr. Grant got the substance abuse treatment he needed while incarcerated. The court there cited Tapia, and the court there, as best I can tell from reading the case carefully, used the plain error standard and found plain error under those circumstances. There isn't very much daylight between that case and this case, if any. Even the government at sentencing suggested a longer sentence would allow Mr. Higuera to complete the RDAP program. Quote, as we've been discussing this morning, it's a severe drug issue. It appears to be that's causing the violations, and so the government believes that additional time in custody is warranted. It will help him to receive treatment, the residential treatment that we've been discussing. Now, later, the judge did say, based on the information presented, the court finds violation conduct warrants a sentence above the Chapter 7 policy statements. I'm sure that the government's going to use that as an argument that the judge was thinking about lots of things, including, but not exclusively, alcohol and drug issues. To that I would say, anticipating that argument, I would say that we still have to reconcile that statement with the earlier statement, which is about as clear as can be, that he picked that term of incarceration to ensure the RDAP program, and that when the judge was talking about violation conduct in the latter statement, he was talking about the drug and alcohol conduct that was charged and admitted, not other things. The remedy for the TAPIA grant violation would be vacating and remand for resentencing? Just for resentencing, that's correct. And how much time does he have left on a sentence? I think he's got April, is that right? Yeah, he's got about four months at this point in time, maybe a little bit more. There is a risk on resentencing that he could get a longer period of time. There is a risk. Your Honor, he asked me to proceed in any event, so I realize that. And here, I guess the standard of review is in dispute. Government thinks it's a plain error. I believe it might be plain error, but it might also be abuse of discretion. The facts, I think, are pretty settled here. The issue is an issue of law, in my opinion, and TAPIA is the law in this case. So I think the Court could entertain that standard of review. And as I said, even if it's plain error, in the United States v. Grant case, the Court found plain error on facts that are very, very similar to this case. Now, I'd like to go back to the first issue. It's an interesting issue. It raises the issue, as the District Court erred, in not sua sponte setting aside defendant's admission once it became apparent the admission was not knowing, intelligent, and voluntary. This issue, I think, raises a very interesting legal question, and that is, can a Rule 32.1 waiver be voluntary, knowing, and intelligent, based upon a material misunderstanding of the consequences? Now, I can't cite to a Ninth Circuit case that says that a defendant in a supervised release violation situation is entitled to know all of the direct consequences, including the possible sentencing range. But he is entitled to due process. Well, he was informed of the sentencing range. Well, he was, but the record, I think, makes clear that he wasn't processing that information correctly. And he said things along the way that made that pretty clear, I thought. Well, he thought the policy statements would be followed, but that's, you know, the magistrate judge said it's 24 months you can get. He may not have believed that, but it's hard to say that he was, you know, the sentence was misrepresented. Well, I think it goes a little bit beyond that. I think he truly believed, and he articulated that belief, that he couldn't get more than 12 months. And I'll quote a statement that he made at the end of the sentencing proceeding. I think that sheds light on his earlier statements and what he was trying to convey. This is the defendant at the sentencing. Yeah, so basically I'm getting over the mandatory sentence. I'm getting over the mandatory sentence that I'm supposed to be imposed to. These are his words. Because you guys can only give me more, no more than 12 months, because I already served 12 months on a violation. That statutory minimum is 24 months. Now, that's a little bit convoluted, but I think it's a pretty clear statement on his part that he felt aggrieved at that point in time. He felt that. What was the magistrate judge to do? The judge had clearly told him that he could get up to 24 months, and he had been advised of that by his counsel, and it was in the papers. And, yes, he may have been confused, but what is the court supposed to do in that circumstance and pound him over the head? It's 24. I mean, even if he's exhibiting confusion, I mean, it's a sad thing in our justice system, but some people are just confused, and the court's done everything right. You can't fault the district court for presenting the magistrate judge here for having presented the information to someone who maybe was confused. The best answer I can give to that, and you're absolutely right, Your Honor, you never know what the defendants really understand, but I think there's an obligation on the part of the magistrate judge,  and the signals, I would argue, were pretty clear. I've set forth the pertinent part of the colloquy, where Mr. Higueric continues to allude to the policy statements. Before the magistrate judge, the magistrate judge advises him that the maximum is 24 months, and then he asks his attorney, have you reviewed with your client the term of imprisonment? The attorney says, yes. Do you believe he understands? Yes. And then the court asks him, do you understand the term of imprisonment? And he says, well, Category 4? He says, yeah. Yeah, Category 4. So, you know. And then he says, yes, you're in Category 4. And he said, yes. Right, and I guess I'm out of time here. But, again, he continues to allude to the policy statement range. That's what he's saying when he says, in Category 4, in response to the question, do you understand the sentencing range, he's clearly thinking 6 to 12 months. That should have prompted some kind of response from the magistrate judge. Sir, do you understand? It's not really 6 to 12 months. It's up to 24 months. What I just said, 24 months. Yeah. All right. Thank you, counsel. Thank you. Good morning. May it please the Court, my name is Bridget Minder on behalf of the United States. The defendant's repeated violations on supervised release were a serious breach of the court's trust that posed a danger to the public and warranted a sentence above the policy range. Given defendant's continued drug use and his long history of drug abuse, the opportunities for rehabilitation were rightly the focus of the final disposition hearing. And Tapia makes clear that that kind of discussion isn't just allowed, it's encouraged. So the question is not whether the district court focused on the opportunities for rehabilitation. The question before this panel is much narrower. It's whether the district court impermissibly lengthened the defendant's sentence, gave him a longer sentence than it was otherwise inclined to give, solely for the purpose of allowing for treatment. And that didn't happen here. As the appellant's counsel acknowledged, the court clearly said that the violation conduct warranted the above-range sentence. Now, the court did say that it was sentencing the defendant to allow for treatment. So as appellant's counsel said, you have to reconcile those two statements. And when you look at the rest of the record, the rest of the record is consistent with the statement that the violation conduct warranted the above-range sentence. Now, this was... Tapia says, in terms, it describes all the things you can do and then says what you can't do. And it says these statements suggest that the court may have calculated the length of Tapia's sentence to ensure that she received certain rehabilitative services. And that a sentencing court may not do. Now, if that's the standard, whether it may have calculated the length in order to ensure that she received certain rehabilitative services, if that was a problem in Tapia, why is it not a problem when the only explanation on the record is the court has sentenced defendant to that term of imprisonment to allow defendant correctional treatment, in particular, the RDAP program? Isn't this Tapia? It's not, Your Honor, because there's no indication that the district court considered a shorter sentence. The defendant and his counsel never even asked for a particular sentence in this case. And as the court pointed out earlier, the government and the probation officer both were recommending a higher sentence, the 24-month sentence. And so there's no indication anywhere in the record that the court was ever considering a lower sentence but lengthened it for the purpose of allowing for treatment. And the sentence that the court imposed, the 20-month sentence, doesn't even correlate to a particular length of time that's required for treatment. There was confusion at the final. Let me tell you what I'm concerned about, having actually sentenced people. In a sentencing hearing, you spend a lot of time in the discussion part, discussing all the various factors that may or may not go into the sentence. And I can see how some of the discussion maybe could leave you with a thought that maybe this wasn't the rationale for the district court. But then you come to the serious part of the sentence, which you know, when the judge actually pronounces a sentence and gives his reasoning. And the statement that most concerns me comes in that portion of the sentencing hearing where the court is giving its reasons under 3583. It was supposed to be 3553, but it says 3583. It says the court has sentenced defendant to that term of prison to allow defendant correctional treatment, in particular the RDAP program. And I don't see how that differs at all from what the district court judge said in Tapia. The government's position is that we need to keep reading. If the court had stopped there, I think the sentence would have run afoul of Tapia. But if we keep reading three or four lines down, the court goes on to explain that the violation conduct warrants the above-range sentence. But in Tapia, the court said this was one of the factors. How does that differ? Because it wasn't just the sole factors. It was one of the factors. Well, I think here we look to the record, Your Honor, and we looked to the serious nature of the violations that support the court's statement that the violation conduct warranted the above-range sentence. This was the defendant's second time on supervised release in this case. And both times, within the first few days and the first few weeks of going on release, he starts using drugs again and he starts committing additional crimes. So that would justify the district court, without regard to the RDAP program or any rehabilitative goals, to have sentenced him to 20 months. But that doesn't seem to be what happened here. I mean, I tend to agree with you. In the absence of that stated rationale, the sentence was not unreasonable. Well, if we focus on one sentence that the district court issued in isolation and we find that one sentence is enough to violate TAPIA, then I concede that if we focus on that one sentence, the sentence... But, you know, TAPIA is not just a technical thing. You know, I think that we're not just looking at something that is a rule of law because it's a technical violation. There's a real reason for having that rule, and that is that the district court actually has no power. And just like in TAPIA, the court reason, you know, he can recommend, but he has no power. And, in fact, TAPIA did not get the rehabilitation he needed, just like in this case. So to extend the sentence for that reason, it's just not what Congress had in mind. Well, I think I have two responses to that. First, as the court pointed out, the remedy if the court finds that there's a TAPIA violation is remand for resentencing, and there's a danger that focused on the violation conduct alone, the sentence may be longer. I think that even if this court finds that the district court plainly erred in imposing the sentence by violating TAPIA, this court can nonetheless affirm the sentence because the defendant hasn't shown that he's likely to get a shorter sentence. And this court, as we pointed out in our 28J letter, has done that in multiple cases in the past. So if this panel finds that the district court plainly erred, the sentence can still be affirmed under the plain error standard, which we believe applies. It was applied in Grant. It was applied in dozens of cases, whereas here the defendant does not object at sentencing up to as recently as three weeks ago in the Waitman case that we cited. Let me ask an unrelated question. There was some discussion about whether further charges were going to be brought in state or federal court. Do you know if that ever occurred? Your Honor, I am unaware of any further charges that have been brought as of yet in federal court. I'm not aware of any state court charges either, but I haven't scoured their system. The defendant was found with more than $11,000 worth of stolen money, orders, and checks that were stolen from the downtown Phoenix post office at the time he was arrested on this supervised release violation, which is the exact same conduct that gave rise to the initial indictment in this case. The statute of limitations period hasn't run for those charges to be brought, and so they may still be brought. I want to touch on the issue of the defendant's admission in the last couple of minutes. The defendant makes two concessions in his reply brief that are fatal to his claim on this issue. First, the defendant concedes in his reply that the court was not required to advise the defendant of the statutory maximum before accepting his admission. The court, this court in Siegel, held that Rule 11's requirements don't apply to Rule 32.1 admissions. And the defendant concedes that there's no case law in this circuit requiring that, and indeed there are several unpublished cases holding that's not required. So that's one point. The second point that the defendant concedes in his reply and that was discussed earlier this morning is that the magistrate judge did confirm three different ways that the defendant understood the statutory maximum sentence. And so essentially in trying to say that the district court or the magistrate judge should have read the signals, the defense is really arguing that the magistrate judge needed to be a mind reader, that despite a very clear record and confirming three different times that the defendant was advised of the statutory maximum, that somehow the magistrate judge should have intuited that he was confused. And Rule 11 and Rule 32.1 don't require judges to be mind readers, and that's an unworkable standard that the defendant is urging. And the defendant's best point for saying that he was confused was the statement at the very end of sentencing where he says, but wait, you can only give me 12 months. And that was at the final disposition hearing in the final few minutes, as the defendant is literally being ushered towards the exit by the marshals. And he seemed to be surprised. Well, you know, the defendant, and I think this comes through in the transcript, the defendant was fairly confrontational and belligerent at the final disposition hearing, and so he's making these statements as he's being ushered towards the door by the marshals. But if a defendant is allowed to invalidate his admission or his plea by saying at the end of a sentencing after he has received a sentence that he was somehow confused about the amount of time he would get, that would jeopardize a lot of admissions and a lot of pleas. Defendants could wait until the very last minute after they've received a sentence if they were unhappy about it and exclaim that they were confused and seek to withdraw it. And this Court doesn't allow that. We focus at the time of the plea or at the time of the admission, is the admission knowing, intelligent, and voluntary? And the record here from the admit-deny hearing is clear. I was at the hearing. The record confirms what we knew in the courtroom. It was clear that he was advised in multiple ways. So we ask the Court to affirm the revocation of defendant's supervised release and the 20-month sentence that the District Court imposed. Thank you. Thank you, Counsel. The case has started to be submitted for decision.
judges: Thomas, Wardlaw, Collins